**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BERNARD PRUITT,** | ) | **CASE NO. 1:08CV2550** |
| | ) | |
| **Petitioner,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **ROBERT WELSH, WARDEN,** | ) | |
| **TOLEDO CORRECTIONAL INST.,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Bernard Pruitt ("Pruitt"), through counsel, challenges the constitutionality of his conviction in the case of *State v. Pruitt*, Cuyahoga County Court of Common Pleas Case No. CR-474921. Pruitt filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 28, 2008. On February 23, 2009, Warden Robert Welsh ("Respondent") filed his Answer/Return of Writ. (Doc. No. 6.) Pruitt filed a Traverse on June 11, 2009. (Doc. No. 9.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Pruitt's Petition be denied.

## I.  Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Pruitt's conviction as follows:

{¶ 4} At trial, Officer Andrew Papaleo, of the Cleveland Police Department, testified that on December 5, 2005, he was on routine patrol with his partner Officer Chris Haist. Officer Papaleo testified that at approximately 3:00 a.m., they spotted a minivan driving with the high beams on. After checking the license plate, he and Officer Haist discovered the license plate did not match the van. In an attempt to initiate a traffic stop, Officer Haist pulled behind the van and activated the overhead lights and sirens. In response, the minivan accelerated, ran through several red lights, and proceeded onto Interstate 71 South.

{¶ 5} Officer Papaleo testified that they pursued the minivan as it sped along the highway and eventually slowed down to exit on to West 14th Street. After the minivan slowed down, Officer Papaleo observed the sliding passenger door open and saw a muzzle flash coming from the area of the door about four or five feet off the ground. The muzzle flash was accompanied by the sound of gunfire, which prompted Officer Haist to slow the pace of pursuit and request backup.

{¶ 6} The minivan turned down a side street, slowed down, rolled to a stop, and crashed into a fence. Officer Papaleo observed four males exit the minivan, two from each side, who then fled the scene. Officers Papaleo and Haist approached the vehicle and secured a lone female occupant, who was later identified as Tasabra Baker. The backup officers pursued the four males who had fled on foot.

{¶ 7} Officer Papaleo testified that approximately five minutes later, the backup officers returned with Pruitt, and another suspect, David Reed, who was later determined to be the driver. Officer Papaleo testified that David Reed directed Officer Haist to the location where the gun could be found. Approximately five minutes later, on the side of the street where Officer Papaleo had seen the muzzle flash, Officer Haist found a small two shot Derringer pistol. The pistol had a cream colored handle, was loaded with one live shell and one spent shell casing.

{¶ 8} Officer Haist testified in conformity with his partner Officer Papaleo. The difference in their testimony was his perspective as the driver of the patrol car rather than the passenger. Officer Haist testified that during the chase, he heard one gunshot that came from the direction of the minivan. In response, he slowed the pursuit to distance themselves from the minivan.

{¶ 9} Tasabra Baker testified that on December 5, 2005, she attended a birthday party at the Golden Lady bar with Reed and Pruitt. According to Baker, Reed drove her and Pruitt to the bar. When they arrived at the bar, but prior to exiting the van, Pruitt asked her to find out if the bar was checking for weapons at the door. Baker determined that the bar would not be checking for weapons and indicated that to Pruitt, who then slid a small pearl-handled two shooter handgun into his boots. Baker, Reed, and Pruitt then entered the bar.

{¶ 10} Baker testified that while at the bar, she, Reed and Pruitt were joined by two other males. After some time, the five left the Golden Lady bar and headed towards Baker's cousin's house. Baker stated that on the way to her cousin's house, she sat in the passenger's seat next to Reed, who was driving. Pruitt sat directly behind her in the first row back seat nearest the sliding door. The two other males sat in the second row back seat.

{¶ 11} Baker testified that at some point she fell asleep, but was awakened to the sound of sirens and everyone yelling for Reed to stop. During the chase, Baker heard the sound of a gunshot. When she turned around, she saw Pruitt with a gun in his hand, pulling it in from the window of the sliding doors. Baker stated that

Pruitt tried to hand it off to the other occupants. Moments later, Pruitt tossed the gun out the window. When the minivan came to a stop, all the males exited the vehicle and fled.

{¶ 12} Reed testified that on December 5, 2005, he left the Golden Lady bar at approximately 2:15 a.m. in the company of Pruitt, Baker, Baker's brother, Tone, and another male known as "Twin." Reed stated that he was driving. Baker sat beside him in the front passenger seat, while Pruitt sat directly behind Baker in the first row back seat. Reed stated that as he approached the area of East 13th Street and Chester Avenue, he observed a patrol car make a U-turn and pull behind his minivan. When the cruiser activated its lights and sirens, Pruitt stated he had a gun, displayed the gun, and indicated that he wanted to exit the vehicle. Reed accelerated, and proceeded onto the highway, with the police in pursuit.

{¶ 13} Reed testified that as he exited the highway onto West 14th Street, Pruitt slid the van door open. Reed stated he heard a gunshot from close range as if it was close to his ears. Reed observed Pruitt pull back into the van and slide the door shut, but Pruitt was no longer in possession of the gun. Reed continued driving for about twenty seconds, came to a stop, all the males exited the vehicle and fled.

{¶ 14} Reed testified that the police apprehended him and Pruitt a few minutes later. Reed stated that he directed the police to where Pruitt had thrown the gun away. Reed also stated that while he and Pruitt were being transported to the police station, Pruitt told him to blame the shot fired on the two males who escaped.

{¶ 15} Finally Reed testified that he did not stop when the police activated the lights and siren because he was on parole and did not have a driver's license. Reed stated that Pruitt's possession of the firearm was the main reason that he did not stop.

{¶ 16} Stacey Paythruss, who at the time of trial was in county jail on a pending felony escape charge, testified that in February 2006, he met Pruitt while both were recuperating in the jail's medical dorm. According to Paythruss, due to his years spent in and out of prison, he developed a reputation among fellow prisoners as being knowledgeable in legal matters. Paythruss stated that Pruitt came to him for legal advice concerning his case. In seeking Paythruss' advice, Pruitt disclosed the facts of the case and indicated that Baker was the only person who could "sink" him, because she had seen him fire the gun.

{¶ 17} Paythruss further stated that Pruitt indicated that he was trying to shoot at the patrol car's windshield to cause an accident and have the police abandon their pursuit. Paythruss also stated that Pruitt indicated that he threw out the gun and instructed Reed to slow down so that the occupants could exit the vehicle and flee.

(Doc. No. 6-1; *State v. Pruitt*, 2007 WL 1501719, *1-3 (8th Dist. Ohio 2007)).

## II.  Procedural History

### A.  Conviction

On December 20, 2005, the Cuyahoga County Grand Jury charged Pruitt with two counts

of felonious assault on a police officer, along with three gun specifications as to each count; one count of failure to comply with order or signal of police, also with three gun specifications; and one count of having a weapon while under disability.  (Doc. No. 6-1, Resp. Exh. 1-4.)  On April 21, 2006, a jury found Pruitt guilty of all charges.  (Doc. No. 6-1, Resp. Exh. 6.)  Pruitt was sentenced to serve an aggregate prison term of sixteen years.  (Doc. No. 6-1, Resp. Exh. 7.)

**B. Direct Appeal**

Pruitt, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising the following assignments of error:

1.  The Defendant was denied his rights to due process and a fair trial under the State and Federal Constitutions when the court erred by admitting the enormously prejudicial testimony that he had threatened to kill a judge and the children of the arresting officers.

2.  The Defendant was denied his right to effective assistance of counsel when defense counsel failed to protect his rights during trial.

3.  The Defendant was denied his constitutional right to a fair trial because of unfairly prejudicial prosecutorial misconduct as the prosecutor deliberately elicited testimony that its witness offered to take a polygraph.

4.  The jury's decision finding the defendant guilty of aiding and abetting the failure to comply was not supported by sufficient probative evidence when no evidence suggested that the defendant – a mere passenger – assisted or encouraged the driver's flight from police.

5.  The jury's decision finding the defendant guilty of two counts of felonious assault of a peace officer was not supported by sufficient evidence and was against the manifest weight of the evidence when the officer did not see how or in which direction the gun fired and it was only fired a single time.

(Doc. No. 6-1, Resp. Exh. 8.)  On May 24, 2007, the state appellate court affirmed Pruitt's conviction.  (Resp. Exh. 10.)

On July 19, 2007, Pruitt filed a timely Notice of Appeal with the Ohio Supreme Court, raising the following propositions of law:

1.  When the trial court admits prejudicial testimony that the Defendant had threatened to kill a judge and the children of his arresting officers, it violates the Defendant's rights to due process and a fair trial.

2.  When the prosecutor elicits testimony that its witness offered to take a polygraph examination, it commits prejudicial misconduct and denies the

4

defendant his constitutional right to a fair trial.

3.   Trial counsel's repeated failure to protect his client's rights during trial was ineffective assistance of counsel of so extreme a nature that the trial resulted in an outcome which was too suspect to stand.

4.   A conviction for aiding and abetting the failure to comply is legally insufficient where no probative evidence demonstrated that the defendant – a mere passenger – assisted or encouraged the driver's flight from police.

5.   When the police did not see how a gunshot was fired or whether the gun was even aimed at them and other evidence established that that gun discharged accidentally, after it was thrown and hit the ground, the jury's verdict finding the defendant guilty of two counts of felonious assault of a peace officer was not supported by sufficient evidence.

(Resp. Exh. 12.)  On October 31, 2007, the appeal was dismissed as not involving any substantial constitutional question.  (Resp. Exh. 14.)

### C.  Federal Habeas Petition

Pruitt, through counsel, filed the instant Petition for a Writ of Habeas Corpus asserting the following grounds for relief:

**Ground One**: The Petitioner was denied his constitutional right to due process and a fair trial when the trial court allowed the admission of unfairly prejudicial and unreliable testimony that Petitioner had threatened to kill a judge and the children of the arresting officers.

**Ground Two**: The Petitioner was denied his Sixth and Fourteenth Amendment Rights to effective assistance of counsel because defense counsel failed to protect Petitioner's rights during trial.

**Ground Three**: The defendant was denied his constitutional rights to due process and a fair trial because the prosecutor improperly introduced evidence at trial that one of its witnesses offered to take a polygraph.

**Ground Four**: Petitioner's right to due process was violated where his convictions for aiding and abetting the failure to comply with an order or signal of a police officer and felonious assaults were not supported by sufficient probative evidence.

(Doc. No. 1.)

### III.  Exhaustion and Procedural Default

## A.  Exhaustion

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair

5

opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B.  Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner

6

is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

Finally, a petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982).

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

7

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

## V. Analysis

**A.  Ground One - Admission of Threatening Statements**

**1.  Procedural Default**

Pruitt asserts that the trial court erred in allowing state witness, Stacey Paythruss, a jailhouse cooperator, to testify that Pruitt threatened the judge whom he initially appeared before and the children of the police officers involved in his case.  (Doc. No. 1 at 5; Doc. No. 6-4 at 506-507.)  Pruitt contends that the jury's exposure to this testimony resulted in an unfair trial. *Id.* at 6.  Respondent argues that this claim is procedurally defaulted as it was not presented to the state court as a federal constitutional issue.  Respondent contends that Pruitt cited no federal case law on appeal -- he simply referred to federal constitutional issues in the heading of the assignment of error.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

Upon review of the record, the Court finds that Pruitt properly raised this issue before the state courts.  His claim was phrased in terms of constitutional law when he argued that he was denied his federal constitutional rights to due process and a fair trial.  (Doc. No. 6-1, Resp. Exh.

8, Tr. 26; Resp. Exh. 12, Tr. 149.)  Therefore, ground one is not procedurally defaulted.[1]

### 2.  Merits Review

As to Pruitt's claim that the trial court erred in allowing Paythruss to testify about the threatening statements, Respondent first argues that this claim is not cognizable in federal habeas as it pertains to a state evidentiary issue.

"[A] trial judge's decision concerning the admission of evidence is a state law matter generally not subject to habeas review."  *Wilson v. Parker*, 15 F.3d 682, 705 (6th Cir. 2008).  *See also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.") (*quoting Cooper v. Sowders*, 83 F.2d 284, 286 (6th Cir. 1988)).  A federal court may review a state-court ruling regarding the admission of evidence only "if an evidentiary ruling is 'so egregious that it results in a denial of fundamental fairness.'"  *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (*quoting Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)).  "[C]ourts have defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990)).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Bugh* at 512 (*quoting Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).  Pruitt argues that Paythruss' statements regarding threats to kill a judge and the children of the arresting police officers were prejudicial and resulted in an unfair trial.  Therefore, this issue is cognizable.  Nonetheless, as will be discussed below, the Court finds that admission of these threatening statements did not violate Pruitt's constitutional rights.

Pruitt argues that Paythruss' testimony regarding  the threatening statements had nothing to do with the charges he was facing and allowing the statements into evidence caused the "worst

---

[1]Pruitt also argues that even if this ground is procedurally defaulted, he is able to show cause and prejudice due to attorney error.  *See Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999).  The Court will not address this argument.

kind of unfair prejudice." (Doc. No. 1-3 at 3.)  He also argues that no jury instruction was given limiting consideration of this testimony to the issue of Paythruss' credibility rather than as evidence of Pruitt's guilt.  (Doc. No. 9 at 11.)

A state trial court's refusal to give an instruction does not alone qualify as a ground cognizable in a federal habeas corpus proceedings.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment.  *Id*.  The omission of an instruction is less likely to be prejudicial than a misstatement of the law.  *See Walker v. Endell*, 850 F.2d at 475-76 (*citing Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'"  *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (*quoting Henderson*, 431 U.S. 145, 155 (1977)).  Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury.  *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

"[T]he Supreme Court has defined 'very narrowly' the category of infractions that violates 'fundamental fairness.'"  *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990)).  Furthermore, it has left open the question of whether admission of propensity evidence violates due process.  *See Estelle v. McGuire*, 502 U.S. 62, 73, 75 n.5 (1991); *see also Bugh*, 329 F.3d at 512.  The Supreme Court has not held that due process is necessarily violated if a limiting instruction is not given after potentially prejudicial evidence is introduced.  *See Hirsch v. Brigano*, 74 Fed. Appx 486, 489 (6th Cir. 2003)*. In *Hirsch*, evidence was admitted to show that the defendant had the propensity to murder.  *Id*. at 489.  The Sixth Circuit concluded that even if the evidence was improperly admitted, "*Bugh* points out that '[t]hat there is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'  As a result, 'there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to,' under AEDPA.'"  *Id.* (citation omitted)

To determine whether the admission or exclusion of evidence has resulted in a violation

of due process rights, a habeas court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994) (*quoting Chambers v. Mississippi*, 410 U.S. 284, 297, 302 (1973)); *accord Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) ("Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor.") (*quoting Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000)); *Schoenberger v. Russell*, 290 F.3d 831, 835-36 (6th Cir. 2002) (witness "vouching" and "other acts" evidence); *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001) ("other acts" evidence).  Furthermore, constitutional trial errors are subject to the harmless-error analysis.  *See Brecht v. Abrahamson*, 508 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 2d 353 (1993).

The state appellate court concluded that the trial court did not err in allowing Paythruss' testimony to be admitted and stated:

> {¶ 37} The record before us indicates that the trial court took precautions to protect Pruitt's rights to a fair trial. Prior to Paythruss' testimony, the trial court held a hearing outside of the jury to determine whether he should be allowed to testify. The trial court ruled as follows:
>
>> "Based on the arguments that you are giving me right now, he will be permitted to testify to whatever statement Pruitt made to him with regard to the 6th of December with these charges. I do think it is too prejudicial and not outweighed by the probative value for this witness to go ahead and testify to what Pruitt said with regard to Judge Greene or the writing of the letter or the police officers two months after the fact. * * * We are here to decide what occurred on the December date. * * * Certainly raise your issue by objection because either one of you may open up those doors. I don't know. I heard what you said, Mr. Sidoti, and that is that you don't want that statement in. It's not in right now. If something happens, we have to revisit it at the time it happens, okay?"
>>
>> * * *
>>
>> "The other parts of what I guess is in that statement, why you are calling him to testify, that will be permitted. You will have to tell that to the witness before he comes out here that he is limited as well when he answers so it doesn't get blurted out." [FN10]
>
> FN10. Tr. at 457-459.
>
> {¶ 38} The record reveals that during direct examination of Paythruss, the State did not elicit any testimony and Paythruss did not offer any testimony regarding

12

the threats to Judge Greene or to the arresting officers' children. However, during cross-examination, Pruitt's defense counsel pursued a line of questioning regarding Paythruss' motivation for testifying against Pruitt. The following exchange took place:

> "Q. So your testimony here today is in all the times in talking with all these people in regards to drug cases, you never testified in other cases before?
>
> A. No.
>
> Q. Don't you think it is a coincidence you currently have a pending case and you happen to testify in this one.
>
> A. All the other times I had pending cases.
>
> Q. You never testified before?
>
> A. I never had to.
>
> Q. You didn't have to in this case.
>
> A. I really did.
>
> Q. You did?
>
> A. Yeah.
>
> Q. Why is that?
>
> A. 'Cuz some people could have gotten killed.
>
> Mr. Sidotti: I ask this jury to disregard that.
>
> The Court: Overruled." [FN11]

    FN11. Tr. at 498-499.

{¶ 39} The above excerpt reveals that Pruitt's defense counsel opened the door for the statements regarding Pruitt's threat to kill a judge and the arresting officers, to come before the jury. In a sidebar discussion following the above excerpt the State argued that because Pruitt's defense counsel had been insinuating throughout his cross-examination that Paythruss was testifying in exchange for a plea offer, the jury needed an explanation why this case was different. Pruitt's attorney argued that Paythruss was referring to the events of December 5, 2005, and not the threats to kill a judge and the arresting officers' children. The State argued it should be able to ask Paythruss to clarify who could be killed.

{¶ 40} The trial court ruled as follows:

> "If he goes ahead and gives an answer that he meant the police and shooting, there is no issue. If he goes further, there is an issue. He gets to ask the question." [FN12]

    FN12. Tr. at 505.

13

{¶ 41} On re-direct examination, Paythruss stated that he was referring to the threats Pruitt made about killing a judge and the children of the arresting officers. Here, Pruitt's trial counsel's line of questioning opened the door for the statement to come in. A party cannot take advantage of an error he invited or induced. [FN13] Further, a party who invites an error at trial has no one to blame but himself and cannot seek solace in the appellate court. [FN14] It was, therefore, not an abuse of discretion for the trial court to refuse to give a curative instruction or grant a mistrial. [FN15]

FN13. *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310; *Hal Artz Lincoln Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, at paragraph one of the syllabus.

FN14. *State v. Chappell* (1994), 97 Ohio App.3d 515. *See, also, Lester v. Leuck* (1943), 142 Ohio St. 91; *State v. Kniep* (1993), 87 Ohio App.3d 681.

FN15. *State v. Hill* (1987), 37 Ohio App.3d 72.

{¶ 42} Moreover, as discussed in the fourth and fifth assigned errors above, the State presented sufficient evidence to convict Pruitt of the crimes for which he was charged. Thus, the evidence of the alleged threats to kill a judge and the children of the arresting officers did not necessarily prejudice Pruitt. Accordingly, we overrule the first assigned error.

(Doc. No. 6-1, Resp. Exh. 10; *State v. Pruitt*, 2007 WL 1501719 (8th Dist. Ohio 2007)).

Pruitt argues that the admission of Paythruss' alleged threatening statements caused the jury to find him guilty of felonious assault even though there was also reasonable evidence before the jury that the gun accidentally discharged when it hit the ground after Pruitt threw it out of the vehicle.  (Doc. No. 9 at 14.)  Respondent contends that the state appellate court applied Ohio's "invited response" doctrine.  Ohio courts have applied this doctrine when defense counsel "opened the door" through questioning.  "A party cannot take advantage of an error he invited or induced."  *Center Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310 (1987).

In *Schoenberger v. Russell*, 290 F.3d 831, 834-835 (6th Cir. 2002), the Sixth Circuit concluded that the state appellate court correctly applied the plain error standard in its determination to admit testimony of social workers and a probation counselor regarding their beliefs as to whether minor abuse victims truthfully reported defendant's sexual abuse. *Schoenberger* at 834, 835.  These witnesses' statements were invited by defense counsel's own questioning in which he was attempting to attack their credibility.  *Id.* at 835.  The state appellate court determined that defense counsel's attack on the credibility of the witnesses "defused any

14

prejudice" their statements may have created.  *Id*.  The Sixth Circuit concluded that the state

appellate decision was not contrary to, nor an unreasonable application of, clearly established

federal law.  *Id*.

Under *Schoenberger*, the state appellate court properly applied state law in concluding

that defense counsel invited the error.  Defense counsel attacked Paythruss' credibility to

"defuse" his testimony regarding Pruitt's admissions.  The jury was instructed to consider the

weight to be given  to all the witnesses' testimony and their believability, including Paythruss.

(Doc. No. 6-6 at 844-846.)

Furthermore, even if the alleged threats to a judge and the children of the arresting

officers could arguably be considered propensity evidence, there is no clearly established

Supreme Court precedent which holds that a state violates due process by permitting such

evidence.  "While the Supreme Court has addressed whether prior acts testimony is permissible

under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S.Ct.

644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99

L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms."  *Bugh v.*

*Mitchell*, 329 F.3d at 513.  Consequently, this Court finds that there is no Supreme Court

precedent that the appellate court's decision could be deemed "contrary to" under AEDPA.

Finally, assuming that the state court violated Pruitt's constitutional rights, he is not

entitled to relief.  For purposes of federal habeas review, a constitutional error that implicates

trial procedures is considered harmless if it did not have a "substantial and injurious effect or

influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct.

1710, 123 L.Ed.2d 353 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18, 127 S.Ct. 2321, 168

L.Ed.2d 16 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases);

*O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (habeas court

should grant petition if it has "grave doubt" about whether trial error had substantial and

injurious effect or influence upon the jury's verdict); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411

(6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit).

Here, there was strong evidence upon which the jury could convict Pruitt,

15

notwithstanding Paythruss' testimony as to the alleged threatening statements.  The officers involved in the pursuit of the van observed the shot.  (Doc. No. 6-3 at 171-182; Doc. No. 6-6 at 703-711.)  One officer observed the van's passenger door open and a muzzle flash, caused by the firing of a gun about four to five feet off the ground.  (Doc. No. 6-6 at 706-708.)  A two-cylinder gun was recovered along the route that the van traveled, near where the shot was fired.  (Doc. No. 6-3 at 182.)  It was loaded with one live shell and one spent shell casing.  (Doc. No. 6-3 at 184.)

One of the passengers in the van, Tasabra Baker, testified that Pruitt earlier in the evening possessed the gun that was later recovered by the police.  (Doc. No. 6-3 at 247.)  She stated that the group had gone to a bar and she saw Pruitt slip the gun into his boot prior to entering the bar.  (Doc. No. 6-3 at 246-247.)  She said she later heard a gunshot and saw Pruitt holding the gun outside the van.  (Doc. No. 6-3 at 248-249.)  Seconds later, she observed him toss the gun out the vehicle.  (Doc. No. 6-3 at 249.)

The driver of the van, David Reed, testified that he saw Pruitt slide the van door open, heard a loud gunshot, and then saw Pruitt come back in the van without the gun.  (Doc. No. 6-4 at 371-372.)  After Pruitt and Reed were arrested, Pruitt tried to get Reed to blame the shot on the other two men in the car who were never caught by the police.  (Doc. No. 6-4 at 376.)

Paythruss' testimony confirmed this evidence.  Paythruss testified that Pruitt came to him while in prison for legal advice.[2]  (Doc. No. 6-4 at 462.)  When the State proceeded to question Paythruss on direct examination, he stated that Reed directed the police to the location of the gun. (Doc. No. 6-4 at 463.)  He further testified that Pruitt said he was trying to shoot at the police car's windshield to cause an accident and stop the chase.  *Id*.  He also stated that a van with five passengers was involved in the incident.  (Doc. No. 6-4 at 467.)  He testified that Pruitt told him that he slipped the gun into his boot prior to entering a bar earlier that evening.  (Doc. No. 6-4 at 470.)

---

[2]Testimony was elicited that Paythruss did not know Pruitt or any of his friends prior to meeting him in jail.  (Doc. No. 6-4 at 151, 152.)

16

Finally, the State made no attempt to use the threats Pruitt allegedly made against the judge and the children of the arresting officers as proof of Pruitt's propensity to commit the crimes for which he was convicted.  In its initial closing argument, the State did mention these threats, but only in the context of why Paythruss decided to testify, the very reason they were admitted.  (Doc. No. 6-6 at 765-768.)

This Court cannot conclude that the questioned testimony had a substantial and injurious effect or influence on the jury's verdict.

### B.  Ground Three – Prosecutorial Misconduct

Pruitt further contends that his right to a fair trial was violated by the prosecution deliberately eliciting a statement from a detective that Paythruss was willing to undergo a polygraph examination.

To establish a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate conduct warrants a reversal.  *See Girts v. Yanai,* 501 F.3d 743 (6th Cir. 2007); *United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994).  First, a court must determine whether a prosecutor's conduct was improper followed by a second determination as to whether the impropriety constitutes reversible error.  *DeJohn*, 368 F.3d at 548.  The following four factors are used to determine whether reversal is necessary: "(1) whether the [conduct] tended to mislead the jury or to prejudice the accused; (2) whether [it was] isolated or extensive; (3) whether  [it was] deliberately or accidentally . . . [put] before the jury; and (4) the strength of the evidence against the accused."  *Id*. (*quoting Carroll*, 26 F.3d at 1385).  In order to constitute the denial of a fair trial, prosecutorial misconduct must be " 'so pronounced and persistent that it permeates the entire atmosphere of the trial,'"  *United States v. Thomas*, 728 F.2d 313, 320 (6th Cir. 1984) (*quoting United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir. 1980)), or "'so gross as probably to prejudice the defendant.'"  *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988) (*quoting United States v. Flake*, 746 F.2d 535, 542 (9th

17

Cir.1984), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985)).  Further,

prosecutorial misconduct claims are subject to harmless error analysis.  *See Pritchett v. Pitcher*,

117 F.3d 959, 964 (6th Cir. 1997).

The state appellate court concluded that the isolated alleged misconduct did not deprive

Pruitt of a fair trial:

> {¶ 44} In analyzing claims of prosecutorial misconduct, the test is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. [FN16] The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." [FN17] Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. [FN18] Thus, in reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. [FN19]

> FN16. *State v. Jones*, 90 Ohio St.3d 403, 420, 2000-Ohio-187, *citing State v. Smith* (1984), 14 Ohio St.3d 13, 14.

> FN17. *Id. See, also, Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S Ct. 940, 947, 71 L.Ed.2d 78.

> FN18. *See State v. Loza*, 71 Ohio St.3d 61, 78, 1994-Ohio-409.

> FN19. *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.

> {¶ 45} In the instant case, during direct examination of Detective Tim Sopkovich, the detective who met Paythruss regarding Pruitt's alleged threat against a judge and the children of the arresting officers, the following exchange took place:

> "Q. Was he willing to submit to any tests or anything else?

> A. Yes. He said if need be, he would do a voice stress or polygraph test.

> Q. He offered that?

> A. That is correct." [FN20]

> FN20. Tr. at 560.

> {¶ 46} Generally, evidence of a professed willingness to submit to a polygraph examination is inadmissible. [FN21] Pruitt cites several cases, including *State v. Croston*, [FN22] to support his argument that the State deliberately elicited inadmissable testimony. However, the instant case is easily distinguishable. The cases Pruitt cites all concern the accused's willingness to submit to, or the actual taking of a polygraph test. Here, it involves a witness' willingness to take a polygraph test.

> FN21. *See State v. Hegel* (1964), 9 Ohio App.2d 12.

18

FN22. (Dec. 5, 1988), 5th Dist. No. CA-7533.

{¶ 47} Nonetheless, the record before us indicates that Pruitt was not prejudiced by this isolated, alleged misconduct. As we have previously discussed, the evidence adduced at trial overwhelmingly supported the jury's finding Pruitt guilty of the crimes charged. Thus, we conclude that the isolated, alleged misconduct did not deprive Pruitt of a fair trial.

(Doc. No. 6-1, Resp. Exh. 10; *State v. Pruitt*, 2007 WL 1501719 (8th Dist. Ohio 2007)).

Even if the prosecutor's action in eliciting the testimony was improper, it does not warrant habeas relief.  First, the conduct was isolated.  Moreover, the prosecutor made no argument to the jury regarding this testimony.  Lastly, as previously mentioned, there is an abundance of evidence supporting Pruitt's conviction.  Given that the State's conduct was isolated and the evidence against Pruitt was strong, the determination by the state appellate court that the State's conduct did not violate Pruitt's due process rights was not objectively unreasonable.

### C.  Ground Four and Five – Sufficiency of the Evidence

Pruitt also argues that his convictions for failure to comply with an order or signal of a police officer and felonious assault were not supported by sufficient evidence.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to

the trier of fact limits the nature of constitutional sufficiency review.)

The state appellate court addressed the felonious assault conviction as follows:

{¶ 21} Stated succinctly, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt. [FN3]

FN3. *State v. Eskridge* (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; *State v. Eley* (1978), 56 Ohio St.2d 169, syllabus.

{¶ 22} After reviewing the record in this case, and viewing the evidence presented in the light most favorable to the prosecution, we determine that there is sufficient evidence to sustain Pruitt's conviction. R.C. 2903.11(A)(2) provides in pertinent part:

"No person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶ 23} From the record presented, it is undisputed that Pruitt was in possession of a gun, a dangerous ordnance, and ample testimony was provided that he used it in an attempt to cause physical harm to two police officers. Officer Papaleo testified that he observed the passenger door of the minivan open, observed a muzzle flash approximately four to five feet off the ground, and heard the sound of a gunshot. Officer Haist testified that he heard a gunshot coming from the direction of the minivan and responded by slowing the pace of pursuit to distance himself from the minivan. Officer Haist testified that he recovered the gun in the location that Officer Papaleo observed the muzzle flash.

{¶ 24} In addition, Baker testified that during the chase, she heard the sound of a gunshot, turned around, and witnessed Pruitt with a gun in his hand, pulling it in from the window. Baker testified that Pruitt tried to hand the gun off to the other passengers, but then disposed of the gun by tossing it out the window.

{¶ 25} Further, Reed testified that when the patrol car pulled behind his minivan, Pruitt indicated he had a gun in his possession and displayed it. Reed testified that he saw Pruitt slide the van door open, after which, Reed heard a single gunshot. Reed stated the gunshot sounded as if it was close to his ears.

{¶ 26} Finally, Paythruss testified that while he and Pruitt were in the jail's medical dorm, Pruitt disclosed his motive for firing at the police car. Paythruss testified that Pruitt indicated that he was trying to shoot at the police windshield to cause the police to have an accident and abandon the chase.

{¶ 27} For the foregoing reasons, we conclude that a rational jury could have found the essential elements of felonious assault of a police officer was proven beyond a reasonable doubt.

The state appellate court further addressed the failure to comply conviction as follows:

{¶ 30} Contrary to Pruitt's argument, that he was a mere passenger in a vehicle that fled from the police, the record contains sufficient evidence to support the charge of aiding and abetting. R.C. 2923.03 prohibits complicity with others to commit crimes and provides as follows:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another in committing the offense in violation of Section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense." [FN4]

FN4. *State v. Shropshire*, Cuyahoga App. No. 85063, 2005-Ohio-3588.

{¶ 31} "A person aids and abets another when he assists another in the accomplishment of a common design or purpose." [FN5] The accomplice's criminal intent may be inferred, by direct or circumstantial evidence, and from the presence, companionship, and conduct of the accomplice both before and after the offense is committed. [FN6]

FN5. *State v. Minor* (Mar. 2, 2000), 5th Dist. No. 99CA63, at 7-8 (quoting Black's Law Dictionary (6th ed.1990).

FN6. *State v. Nievas* (1997), 121 Ohio App.3d 451, 456-457.

{¶ 32} When the evidence is viewed in the light most favorable to the prosecution, the jury could find that Pruitt was the catalyst which prompted Reed's failure to comply and subsequent flight from the police. Here, the evidence indicates that as soon as the police attempted to pull the vehicle over, Pruitt announced that he had a gun and displayed it. Reed, who was on parole and did not have a driver's license, decided to flee. Reed testified that Pruitt's possession of the gun was the main reason he did not stop.

{¶ 33} In addition, Pruitt's action in firing at the police complicated the situation and pressured Reed to continue his flight. A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. Knowingly also means that a person is aware of the existence of the facts that his acts will probably cause a certain result or be of a certain nature. [FN7]

FN7. *State v. Bissantz* (1982), 3 Ohio App.3d 108, 111.

{¶ 34} Based upon our review of the record in compliance with the applicable standards, construing the evidence in the light most favorable to the prosecution, we find any rational trier of fact could have properly found Pruitt committed the offense charged beyond a reasonable doubt.

(Doc. No. 6-1; Resp. Exh. 10; *State v. Pruitt*, 2007 WL 1501719 (8th Dist. Ohio 2007)).

The critical inquiry on review of the sufficiency of evidence to support a criminal

conviction is to determine whether the evidence could reasonably support a finding of guilt

21

beyond a reasonable doubt.  This inquiry does not require a court to "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. 276, 282 (1966)(emphasis added).  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S. 356, 362 (1972).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. at 318-19.

Pruitt argues that there was insufficient evidence to convict him of failure to comply to a police order[3] as he was not the driver of the car and there was no evidence that he aided and abetted Reed, the driver, in his attempt to flee.  (Doc. No. 9 at 24.)  He contends that mere presence in the vehicle is not enough.  The evidence, however, suggests that he was much more than a passenger.  A jury could reasonably have found that Pruitt fired at the police cruiser's windshield hoping to end the pursuit and aid his escape.  This alone would be sufficient to find him guilty of aiding the driver in his effort to elude or flee from the police.

As to the felonious assault conviction,[4] Pruitt argues that "[a]ll of the evidence leads to the conclusion that the single shot fired was caused by the gun hitting the ground after being thrown and this does not constitute a felonious assault."  (Doc. No. 9 at 25.)  Yet viewing the evidence in a light most favorable to the prosecutor reveals much more.  One of the officers

---

[3]Failure to comply, as defined in Ohio Revised Code ("O.R.C.") § 2921.331(B), states, "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

[4]Felonious assault, as defined by O.R.C. § 2903.11(A)(2) provides, in pertinent part, that "[n]o person shall knowingly . . . cause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."

involved in the pursuit of the van observed the van's passenger door open and a muzzle flash, caused by the firing of a gun about four to five feet off the ground. (Doc. No. 6-6 at 706-708.) A two-cylinder gun was recovered along the route that the van traveled, near where the officer observed the shot fired. (Doc. No. 6-3 at 182.) It was loaded with one live shell and one spent shell casing. (Doc. No. 6-3 at 184.)

One of the passengers in the van, Tasabra Baker, testified that Pruitt earlier in the evening possessed the gun that was later recovered by the police. (Doc. No. 6-3 at 247.) She stated that she saw Pruitt slip the gun into his boot prior to entering a bar. (Doc. No. 6-3 at 246-247.) She said she later heard a gunshot and saw Pruitt holding the gun outside the van. (Doc. No. 6-3 at 248-249.) Seconds later, she observed him toss the gun out the vehicle. (Doc. No. 6-3 at 249.)

The driver of the van, David Reed, testified that he saw Pruitt slide the van door open, heard a loud gunshot, and then saw Pruitt come back in the van without the gun. (Doc. No. 6-4 at 372.) After Pruitt and Reed were arrested, Pruitt tried to get Reed to blame the shot on the other two men in the car who were never caught by the police. (Doc. No. 6-3 at 376.)

Paythruss testified that Pruitt came to him while in prison for legal advice. (Doc. No. 6-4 at 462.) He further testified that Pruitt said he was trying to shoot at the police car's windshield to cause an accident and stop the chase. (Doc. No. 6-4 at 463.)

After reviewing the record in the matter at hand, the Court finds that there was sufficient evidence that would allow a rational trier of fact to have found all the essential elements of the crimes. Accordingly, Pruitt's convictions are supported by sufficient evidence and his claim is without merit.

### D.  Ground Two – Ineffective Assistance of Counsel

Pruitt contends that he was deprived of effective assistance of counsel in violation of the Sixth Amendment based on the following:

(1) (a) counsel's cross-examination of the State's witness, Paythruss, that opened the door for the statements at issue in ground one, and (b) counsel's failure to request a limiting instruction in response to those statements;

(2) (a) counsel's failure to request a bifurcated trial on the weapons under disability charge, and (b) counsel's failure to request a limiting instruction on the issue of his prior felony conviction; and,

(3) counsel's failure to object when the prosecution elicited a statement from a police officer that Paythruss was willing to take a truth verification test.

To establish ineffective assistance, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id.* To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). AEDPA limits a federal court's review of the state court's conclusion that a petitioner did not suffer any prejudice. *Cf. Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2542 (2003). In fact, § 2254(d) "demands that [the] state-court decision[ ] be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357 (2002).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state appellate court addressed Pruitt's counsel's performance as follows:

{¶ 49} We review a claim of ineffective assistance of counsel under the two-part

24

test set forth in *Strickland v. Washington*. [FN23]  Under *Strickland*, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. [FN24] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. [FN25] Judicial scrutiny of a lawyer's performance must be highly deferential. [FN26]

FN23. (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.

FN24. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph one of syllabus.

FN25. *Id*. at paragraph two of syllabus.

FN26. *State v. Sallie* (1998), 81 Ohio St.3d 673, 674.

{¶ 50} In the instant case, Pruitt specifically contends that his trial counsel was ineffective for failing to bifurcate the charge for having a weapon under a disability, and for failing to prevent testimony from Paythruss to come before the jury. We are not persuaded.

{¶ 51} After reviewing the entire record, we cannot conclude that the performance at trial of Pruitt's attorney fell below an objective standard of reasonable representation. The failure to bifurcate the disability charge did not taint the entirety of the proceedings to the extent that a reasonable probability exists that the result of the proceedings would have been different.

{¶ 52} The State presented sufficient evidence to convict Pruitt of felonious assault of a police officer and of aiding and abetting Reed's failure to comply with the order or signal of a police [sic]. We conclude that trial counsel's failure to bifurcate the disability charge was not prejudicial.

{¶ 53} We have previously concluded in the first assigned error that the testimony regarding Pruitt's alleged threat to kill a judge and the children of the arresting officers did not deprive him of a fair trial. Consequently, when viewed in its entirety, Pruitt has failed to show that his attorney's performance fell below an objective standard of reasonable representation.

(Doc. No. 6-1; Resp. Exh. 10; *State v. Pruitt*, 2007 WL 1501719 (8th Dist. Ohio 2007)).

## 1. Subclaim One – Paythruss' Testimony

Prior to trial, the court granted defense counsel's motion *in limine* to allow only testimony regarding the events relating to the December 2005 incident.  (Doc. No. 6-4 at 455, 457.)  Subsequently, during cross-examination of Paythruss, defense counsel, in the court's view, "opened the door" to allow the testimony regarding Pruitt's alleged threats.  After the actual threatening statements were allowed, defense counsel neither objected nor requested a limiting instruction.

25

Pruitt argues that there is a reasonable probability that the jury's conviction was based on counsel's "opening the door" to Pruitt's alleged threatening statements. Pruitt also contends that the state appellate court misapplied the *Strickland* standard. (Doc. No. 13 at 4-5.) Respondent argues that counsel's strategy was to undermine Paythruss's credibility by showing that he had been previously incarcerated. Furthermore, counsel elicited from Paythruss that he was awaiting sentencing on a parole violation. Through this testimony, defense counsel was purportedly raising an inference that Paythruss was only looking out for himself by testifying as a state witness and potentially receiving a reduced sentence. Respondent also argues that by asking for curative instructions, counsel would be drawing further attention to these "fleeting moments" at trial.

The Sixth Circuit recently held that counsel's failure to request a limiting instruction constituted ineffective assistance of counsel. *Thompkins v. Berghuis*, 547 F.3d 572, 591 (6th Cir. 2008), *cert. granted,* 78 U.S.L.W. 3138 (U.S. Sept. 30, 2009). Thompkins was convicted of murder. At trial, his "central strategy" was to place the blame on Purifoy, a state witness. *Id*. at 591. Purifoy testified not only to his account of the shooting, but also that he had been acquitted of the murder. *Id*. Defense counsel failed to ask for a limiting instruction. The courts reviewing the decision agreed it was error not to ask for an instruction, but the state appellate court and the district court determined there was no prejudice and, therefore, denied relief. The Sixth Circuit stated: ". . . in the absence of a limiting instruction, the jury could well have believed that it was entirely proper to weigh Purifoy's acquittal as significant evidence that Thompkins must have been the shooter. In fact, the trial court's jury instructions included the statement that '[y]ou may convict the defendant based on the accomplice's testimony, if you believe the testimony and it proves the Defendant's guilty beyond a reasonable doubt.'" *Id*. at 591.

Even though *Thompkins* may be persuasive authority, it is factually distinguishable from the instant case. First, Thompkins defense was that Purifoy, the witness, was the shooter. Here, Pruitt was not attempting to implicate Paythruss in the crime. Furthermore, although Paythruss testified as a state witness, he was not involved in the incident. Also, Paythruss' testimony as to Pruitt's admissions regarding the December incident was consistent with other evidence in the

case.

The state appellate court, relying on *Strickland*, concluded that Paythruss' testimony regarding Pruitt's threat to kill a judge and the children of the arresting officers, when viewed in the entirety of the trial, did not deprive Pruitt of a fair trial.

Even if counsel's performance was deficient, Pruitt has not shown that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As previously outlined, the overall case against Pruitt, not considering the challenged testimony, was strong. Moreover, the State made no attempt to use the threats Pruitt allegedly made against the judge and the children of the arresting officers as proof of Pruitt's propensity to commit the crimes for which he was convicted. In its initial closing argument, the State did mention these threats, but only in the context of why Paythruss decided to testify, the very reason they were admitted. (Doc. No. 6-6 at 765-768.)

The state appellate court may have misapplied the *Strickland* standard, however, this Court finds no reasonable probability that the outcome of the trial would have been different had counsel not "opened the door" for the testimony or if a limiting instruction had been requested and given.

### 2. Subclaim Two – Bifurcated Trial

Pruitt contends that the failure to bifurcate the weapon under disability charge unnecessarily put in front of the jury the fact he had a prior drug conviction. He also argues that counsel was ineffective for failing to request a cautionary instruction limiting the jury's use of the conviction. Respondent argues that it was counsel's strategic decision not to bifurcate the weapon under disability from the other charges. Additionally, Respondent contends that the issue of seeking curative instructions is viewed as a tactical decision.

The state appellate court found that the failure to bifurcate the disability charge from Pruitt's other charges did not "taint the entirety of the proceedings to the extent that a reasonable probability exists that the result" would have been different. The court noted that there was

27

sufficient evidence presented by the State to convict. (Doc. No. 6-1 at 137.)

Upon review of the record, it is clear that defense counsel intended to bifurcate the weapon under disability charge, but did not make a timely request to do so. (Doc. No. 6-5 at 646.) Even assuming that counsel should have done so, or at a minimum should have requested a limiting instruction, Pruitt has not shown that he was prejudiced by the stipulation read to the jury of his prior conviction or by the absence of a limiting instruction. The evidence of Pruitt's prior conviction was necessary to prove the crime of possessing a weapon while under a disability. The State did not expound on the specifics of the crime, or suggest to the jury that his prior conviction showed a propensity to commit the crime with which he was charged. *See United States v. Hope*, 906 F.2d 254, 264 (7th Cir. 1990). The state appellate court ruling was not contrary to clearly established federal law as stated by the Supreme Court in *Strickland*, nor was it objectively unreasonable.

### 3. Subclaim Three - Prosecutor's Elicited Testimony as to Polygraph Test

Lastly, Pruitt contends counsel was ineffective when he did not object to a statement made by a prosecution witness that Paythruss was willing to undergo a polygraph test. The state appellate court did not discuss this alleged error as part of the ineffective counsel claims. Because the issue was not addressed, this Court reviews it *de novo. See Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005), *citing Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

The State did not mention the police officer's testimony that Paythruss had agreed to take a polygraph statement during closing arguments. The defense did, however, by arguing that Paythruss never actually submitted to such a test. (Doc. No. 6-6 at 782-783.) Defense counsel also raised Paythruss' testimony in an effort to lessen his credibility by reminding the jury he was not an eyewitness to the incident, that the State may have offered him a deal on his pending case to testify, and that he had been referred for a psychiatric evaluation. (Doc. No. 6-6 at 793-796.) This Court does not believe that there is a reasonable probability that an objection when the testimony was entered into evidence would have changed the outcome of trial.

Finally, Pruitt argues that the cumulative effect of counsel's errors and omissions denied him a right to counsel. However, "the law of this Circuit is that cumulative error claims are not

28

cognizable on habeas [review] because the Supreme Court has not spoken on this issue." *Cross v. Stovall*, 238 Fed. Appx 32, 41 (6th Cir. 2007) (*quoting Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[N]ot even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Stallings v. Bagley*, 561 F.Supp.2d 821, 847 (N.D. Ohio 2008).  Nonetheless, even considering the cumulative impact of counsel's conduct, in light of the evidence, there is no reasonable probability that the outcome of the trial would have been different.  *See Seymour,* 224 F.3d at 557.

## VI.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Pruitt's Petition be denied.


        s/Greg White
United States Magistrate Judge

Date:    December 18, 2009



## OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**