# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

BERNARD PRUITT,                    )    CASE NO.  1:08cv2550
                                   )
              PETITTIONER,         )    JUDGE SARA LIOI
                                   )
vs.                                )
                                   )    MEMORANDUM OPINION
                                   )
                                   )
ROBERT WELSH, WARDEN,              )
TOLEDO CORRECTIONAL INST.,         )
                                   )
              RESPONDENT.          )

This action is before the Court upon the Report and Recommendation of Magistrate Judge Greg White. (Doc. No. 14.) Petitioner, Bernard Pruitt, has filed objections to the Report. (Doc. No. 16.) For the reasons that follow, the Report and Recommendation is **ADOPTED**, in part, and Petitioner's application for a writ of habeas corpus (Doc. No. 1) is **DENIED**.

## I.    INTRODUCTION

Because Petitioner objected only to certain portions of the Magistrate Judge's Report and Recommendation, the remainder of the Report—including its account of the factual and procedural history of the case—is hereby accepted as written.[1] Thus, the Court will only provide a brief review of the facts, as found by the state appellate court, sufficient to provide context for the asserted objections.

On December 20, 2005, a grand jury indicted Petitioner on two counts of felonious assault on a police officer, one count of failure to comply with an order or signal of a

---

[1] While Petitioner does not object to the Magistrate Judge's recitation of the facts, he offers additional facts, which he believes find support in the record, as well as his beliefs and impressions as to the evidence and the witnesses who testified at trial. These "additional facts" and "impressions" will be addressed, where relevant, in the body of the Court's analysis.

police officer, each of these counts carried with it gun specifications, and one count of having a weapon while under disability. *State v. Pruitt*, 2007 Ohio App. LEXIS 2354, at ¶ 3 (Ohio Ct. App. 8th Dist. May 24, 2007).

        The two police officers who chased the minivan in which Petitioner was a passenger testified at Petitioner's trial. Officer Papaleo testified that, after initiating pursuit of the minivan when the vehicle failed to stop at the direction of the police, he observed the passenger door of the minivan open and a muzzle flash come from four or five feet off of the ground, which was accompanied by the sound of gunfire. *Id*. at ¶¶ 4-5. Officer Haist, who was driving the cruiser, testified that he heard a gunshot that came from the direction of the minivan, and subsequently slowed his pursuit to distance himself and Officer Papaleo from the vehicle. *Id*. at ¶ 8.

        Tasabra Baker, a passenger in the minivan with Petitioner, also testified at trial. Baker testified that she saw Pruitt with a gun on his person earlier in the evening. *Id*. at ¶ 9. Later, when the group entered the van, Petitioner sat behind the front passenger seat, next to the van's sliding door. *Id*. at ¶ 10. During the pursuit, Baker saw Petitioner with the gun, pulling it in from the window. *Id*. at ¶ 11. Baker then saw Petitioner throw the gun out the window. *Id*. David Reed, the driver of the van, testified that, as the cruiser activated the lights and sirens, Petitioner displayed the gun and stated that he wanted to exit the vehicle. *Id*. at ¶ 12. Reed testified that, during the pursuit, he saw Petitioner open the sliding door of the van, heard a gunshot from close range, and saw Petitioner come back into the van and close the door, no longer in possession of the gun. *Id*. at ¶ 13. Reed also testified that the presence of the gun in the minivan was the main reason he did not stop when directed to do so.[2] *Id*. at ¶ 15.

---

[2] At the time of the chase, Reed was on parole, and did not have a driver's license. *Id.* at ¶ 15.

Stacey Paythruss, who at the time of Petitioner's trial was in jail on pending escape charges, and who spent time with Petitioner in the jail infirmary, testified that Petitioner disclosed to him the facts of the case, including the fact that Baker had seen him fire the gun. *Id.* at ¶ 16. Additionally, Paythruss testified that Petitioner indicated that he tried to shoot at the police cruiser's windshield in order to cause an accident and end the pursuit, and that he threw the gun out. *Id.* at ¶ 17. When asked on cross-examination why he was willing to testify against Petitioner, he indicated that he was concerned that people might be killed if he did not come forward. *Id.* at ¶ 38. On redirect, he explained that Petitioner had threatened to kill a judge and the children of the arresting officers, and that Paythruss was concerned for the safety of these intended victims. *Id.* at ¶ 41. Following this testimony, a police officer testified that Paythruss had indicated a willingness to take a polygraph test. *Id.* at ¶ 45. It is undisputed that no such test took place.

On April 21, 2006, the jury found Petitioner guilty on all counts. *Id.* at ¶ 18. The court sentenced Petitioner to sixteen years in prison. *Id.* Petitioner then appealed his conviction to the Eighth District Court of Appeals, which affirmed Petitioner's conviction and sentence on June 4, 2007. (Doc. No. 1, Petition for Writ of Habeas Corpus ("Petition") at 2.) On July 19, 2007, Petitioner further appealed to the Ohio Supreme Court, which dismissed the appeal on October 31, 2007. (Petition at 2.)

Petitioner filed for a writ of habeas corpus on October 28, 2008. (Petition.) In his application, Petitioner raised the following grounds for relief:

> Ground One: The Petitioner was denied his constitutional rights to due process and a fair trial when the trial court allowed the admission of unfairly prejudicial and unreliable testimony that petitioner had threatened to kill a judge and the children of the arresting officers.

Ground Two: The Petitioner was denied his Sixth and Fourteenth Amendment Right to effective assistance of counsel because defense counsel failed to protect petitioner's rights during trial.

Ground Three: The defendant was denied his constitutional rights to due process and a fair trial because the prosecutor improperly introduced evidence at trial that one of its witnesses offered to take a polygraph.

Ground Four: Petitioner's right to due process was violated where his convictions for aiding and abetting the failure to comply with an order or signal of a police officer and felonious assault were not supported by sufficient probative evidence.

(*Id.*)

In his Report and Recommendation, the Magistrate Judge determined either that Petitioner had failed to demonstrate that his trial was fundamentally unfair, or that he was denied effective assistance of trial counsel. He also concluded that the prosecutor did not engage in misconduct, and that the jury's verdict was supported by sufficient evidence. Ultimately, the Magistrate Judge recommended that the petition be denied in its entirety. (Report at 29.)

Petitioner objects to the Report and Recommendation on the grounds that the Magistrate Judge "unreasonably" and "erroneously" disposed of each assignment of error.[3] He further claims that the state appellate court, and, in turn, the Magistrate Judge, applied the wrong standard in evaluating his claim of ineffective assistance of counsel.

## II. <u>STANDARD OF REVIEW</u>

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Court provides, "[t]he judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

---

[3] The Court observes that, with the exception of the objection relating to the effectiveness of trial counsel, Petitioner's "objections" are not objections at all but are, instead, a reiteration of the arguments made in the petition and traverse.

4

With respect to challenges to the determinations made by the appellate state courts in Petitioner's case, this Court has a very limited scope of review. In § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress enacted a rebuttable presumption that a federal court may not grant habeas relief from a state court conviction if the last state court adjudicated "on the merits" the same federal law question that is presented to the federal court. Congress further created two exceptions to that bar. Specifically, a federal court may grant habeas relief where the state court adjudication is either "contrary to" or "involved an unreasonable application of" settled federal law, as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Where a ruling in state court is "on the merits," this Court must give "deference to the state court." *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003).

### III. MOTION TO STRIKE

Before the Court can reach the merits of Petitioner's Objections, it must address Respondent's Motion to Strike. (Doc. No. 17.) By his motion, Respondent seeks to strike the transcript from the April 26, 2006 sentencing of Stacey Paythruss, which is appended to Petitioner's Objections. (*See* Doc. No. 16, Objections, "Attachment," Sentencing Transcript (reference to specific portions shall be denoted as "Sentencing TR at _.")) Petitioner has not filed an opposition to the motion, and the time for filing such an opposition has passed.

From the sentencing transcript, it is evident that, following his plea of guilty to the crime of Escape, in violation of Ohio Rev. Code § 2921.34, Paythruss received community control. (Sentencing TR at 9.) Notwithstanding the fact that the transcript makes no reference to a government deal and, in fact, the government specifically states that Paythruss was not extended any promises with respect to sentencing (Sentencing TR at 3), Petitioner insists that a

sentence of community control must be the result of some secret deal.[4] In support of his suspicion that any alleged leniency Paythruss received was in connection with his testimony given at Petitioner's trial, Petitioner makes reference to defense counsel's comment at sentencing that "I think the Court is aware of all the particulars of some of the interesting matters he's been involved with while he's been incarcerated." (Sentencing TR at 8.) He also notes that there was a waiver of the presentence investigation report (PSI), and highlights the fact that Paythruss had a "deplorable criminal history." (Objections at 9.) Respondent seeks the exclusion of this exhibit on the grounds that it was not part of the record before the state appellate court, and that Petitioner had not sought leave under the appropriate procedural mechanism for expanding the record.

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004). Generally, a federal court reviewing a habeas petitioner may not examine evidence not presented in state court unless the petitioner can establish that (1) he diligently sought to develop the claim in state court, or (2) he satisfies the conditions provided in 28 U.S.C. § 2254(e)(2). *Richey v. Bradshaw*, 498 F.3d 344, 351 (6th Cir. 2007). It is not surprising, therefore, that the record before a federal habeas court can only be expanded under limited circumstances, and any decision to expand the record is left to the discretion of the district court. *West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008).

Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court to expand the record to include additional materials "relating to the petition." R. Governing

---

[4] Petitioner conveniently overlooks the fact that Paythruss also received credit for the six months of imprisonment he served prior to sentencing. (Sentencing TR at 9.)

Section 2254 Cases 7(a). This additional material may "include, without limitation, […] documents, exhibits, and answers under oath, if so directed, to written interrogatories propounded by the judge. Affidavits may be submitted and considered as a part of the record." *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986) (quoting Rule 7(b)).

Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to request an evidentiary hearing in a federal habeas proceeding. Under this section, "[a] habeas petitioner must develop the factual basis of his claim in the state court proceedings rather than in a federal evidentiary hearing unless he shows that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts." *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) (citing 28 U.S.C. § 2254(e)(2)). Additionally, under § 2254(e)(2), a petitioner must establish that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). *See Mark v. Ault*, 498 F.3d 775, 788 (8th Cir. 2007).

Section 2254(e)(2) limits Rule 7 requests to expand the record to the same extent that it limits the availability of an evidentiary hearing. *Holland*, 542 U.S. at 653 (the restrictions of § 2254(e) also apply "when a prisoner seeks relief based on new evidence *without* an evidentiary hearing") (emphasis in original); *Ward v. Hall*, 592 F.3d 1144, 1162 (11th Cir. 2010); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) (applying § 2254(e)(2) to expansion of the record when intent is to bolster the merits of a claim with new evidence). *See Samatar v. Clarridge*, 225 Fed. App'x 366, 375 (6th Cir. 2007). Thus, when a petitioner seeks to introduce evidence in a federal habeas proceeding that was not before the state court, the

petitioner must establish both his due diligence in bringing the evidence to light, and the clear and convincing nature of the proposed evidence. *See* 28 U.S.C. § 2254(e)(2).

At the outset, the Court observes that Petitioner failed to move, under Rule 7, for an expansion of the record. Instead, he simply appends the unauthenticated copy of the transcript to his objections. The filing of such a motion would have, however, been futile inasmuch as Petitioner would have been unable to meet the requirements of 28 U.S.C. § 2254(e)(2). "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court [...]." *Williams v. Taylor*, 529 U.S. 420, 435 (2000). "To meet the burden § 2254(e)(2) imposed, [a p]etitioner [must] show that his claim was based either on a new retroactive rule of constitutional law, or on 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Cooper-Smith*, 397 F.3d at 1241-42 (citing 28 U.S.C. § 2254(e)(2)). For example, in *Cooper-Smith*, the petitioner did not exercise the requisite due diligence where he knew of the existence of the information contained in his proffered declaration and affidavit at the time of his state court proceedings, but failed to present it during those proceedings. *Cooper-Smith*, 397 F.3d at 1241.

A review of the relevant time line demonstrates that Petitioner did not exercise due diligence. *See, e.g., Ward*, 592 F.3d at 1160 (review of the procedural history, including the dates relating to the petitioner's state habeas proceedings, demonstrated that the petitioner knew of the proposed evidence three years prior to state proceedings but failed to secure affidavits and witness testimony for use at those state proceedings). Paythruss was sentenced on April 26, 2006, five days after the jury returned its verdict against Petitioner, and Petitioner's conviction

and sentence were not affirmed on appeal until May 24, 2007. Notwithstanding the fact that Petitioner, who was represented by counsel, had more than one year thereafter to submit this evidence to the state courts before his appeal was finally denied, Petitioner failed to acquire (and, more importantly, to properly incorporate into the record) the transcript in question. As such, Petitioner could not have argued that he exercised due diligence in relation to the sentencing transcript.

Nor could Petitioner claim that the proffered evidence would "be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). The attached transcript does not establish that Paythruss was offered any consideration in exchange for his testimony at Petitioner's trial. Indeed, it is clear from the transcript that no promises were made to Paythruss. (TR at 3.) This "new" evidence brings Petitioner no closer to demonstrating that Paythruss was offered a deal, secret or otherwise, in exchange for his testimony at Petitioner's trial, such that the jury was mislead as to the reason Paythruss was willing to testify. Accordingly, Petitioner cannot satisfy the second requirement of § 2254(e)(2). *See, e.g., Mark*, 498 F.3d at 789 (subsequently discovered DNA evidence was not available in the petitioner's federal habeas where it would not have excluded Petitioner as the perpetrator of the charged offense).

In sum, the Court finds that Petitioner could not have satisfied the requirements of § 2254(e)(2). Therefore, Respondent's motion to strike is **GRANTED**.

9

## IV.  <u>OBJECTIONS</u>

### A.  **First Objection – Report and Recommendation unreasonably and erroneously denied Petitioner's Claim Challenging the Fundamental Fairness of his Trial.**

In his first objection, Petitioner insists that the Magistrate Judge erred in failing to come to the conclusion that the admission of Paythruss's testimony regarding Petitioner's alleged plans to kill a judge and the children of the arresting police officers rendered the trial fundamentally unfair. According to Petitioner, once the jury heard of the threats, "no juror could do anything but convict." (Objections at 8.) He now offers his suspicion that Paythruss had been promised leniency in exchange for his testimony, and argues that he should have been allowed to explore this possible deal without risking the introduction of highly prejudicial evidence.

To the extent that Petitioner is, as Respondent suggests, now raising a quasi *Brady* argument that the government failed to make available exculpatory evidence, such as the existence of a deal with Paythruss, the Court observes this argument has been raised for the first time in his objections. "The purpose of an objection is not to present new claims, but to argue against the findings, conclusions, and recommendations of the R&R based on the law and the record." *McIntosh v. Hudson*, 632 F. Supp. 2d 725, 729 (N.D. Ohio 2009). *See also Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000) ("it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate") (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)).

In the request for a writ of habeas corpus, Petitioner stated that Paythruss "denied that he had received a deal in exchange for his testimony, but eventually received only community control for that case (imposed *without* a PSI; all costs, fees and fines waived despite a deplorable criminal history)." (Petition, Attachment C at 6.) While Petitioner may have hinted

10

at his suspicion regarding the existence of a deal, he did not raise a possible *Brady* violation in his assignments of error. Therefore, the argument cannot be considered at this time.

### 1. Application of the AEDPA's "Clearly Established" Federal Law Requirement

Petitioner contends that the Magistrate Judge misapplied the "clearly established Federal law" requirement as outlined in the AEDPA and construed it too narrowly. As stated above, a district court may not grant habeas relief on a case that has been tried on the merits in state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Supreme Court in *Williams v. Taylor* observed:

> [A] state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular […] case […or] if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams v. Taylor*, 529 U.S. 362, 407 (2000). "However, 'the lack of an explicit statement' of a particular rule by the Supreme Court 'is not determinative' of clearly established law, since 'the Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent.'" *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

Petitioner argues that the Magistrate Judge construed "clearly established federal law" too narrowly by denying Petitioner relief "in the absence of a well-established Supreme

Court case explicitly announcing that relief is required on the same or similar facts." (Objections at 12.) According to Petitioner, the Magistrate Judge "labeled" the evidence as "propensity evidence," and then concluded that no Supreme Court decision has held that the admission of such evidence violates due process. (*Id*. at 11.) He complains that he should not have to wait for a "nearly identical factual pattern" in a Supreme Court case to demonstrate that "clearly established federal law" was misapplied. (*Id*. at 12.) *See Panetti v. Quarterman*, 551 U.S. 930 (2007).

Petitioner misunderstands the essence of the Magistrate Judge's analysis. At the outset, it is critical to note that Petitioner has apparently overlooked the fact that the Magistrate Judge did not base his recommendation on a finding that the Supreme Court had not condemned the admission of propensity evidence. Instead, he turned to Ohio's invited error doctrine, and found that the state appellate court properly applied state law to find that Petitioner had invited the error by opening the door to this testimony.

The Court agrees that trial counsel opened the door to this testimony. The trial court initially ruled that the prosecution would not be permitted to question Paythruss regarding the substance of the threats. *Pruitt*, 2007 Ohio App. LEXIS 2354, at ¶ 37. On cross-examination, however, defense counsel specifically questioned Paythruss's motives in testifying, hinting that it was more than a coincidence that he was willing to testify when he happened to have pending charges against him. In response to defense counsel's suggestion that Paythruss did not have to testify in this case, the witness indicated that he "really did" need to testify. When counsel prodded further, Paythruss explained: "Cuz some people could have gotten killed." *Id*. at ¶ 38. On re-direct, Paythruss explained that he was referring to the threats Petitioner had made against the judge and the children of the police officers. *Id.* at ¶ 41.

12

"'Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). Here, Petitioner's trial counsel clearly opened the door, and invited the response that was ultimately elicited by the prosecution. Having invited the response, Petitioner could not, under Ohio's "invited error" doctrine, have taken advantage of any resulting error. *See Center Ridge Ganley, Inc. v. Stinn*, 31 Ohio St. 3d 310, 313 (1987). Given counsel's trial strategy to discredit Paythruss, and the manner in which the evidence was brought to light, the Court cannot say that the state appellate court's application of state law was contrary to federal law. *See, e.g., Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002) (habeas petitioner was not entitled to relief where trial counsel invited certain damaging testimony in the course of pursuing certain trial strategy). For this reason, alone, the Court may reject Petitioner's objection.

The Magistrate Judge also, however, considered whether the admission of the threats, if counsel had not invited the error, would have rendered the trial fundamentally unfair. The Magistrate Judge began from the firm foundation that, generally, evidentiary rulings do not rise to the level of due process violations unless they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)). (*See* Report at 10.) He then quite properly turned to Supreme Court precedent to determine whether such a ruling, coupled with the failure to give a limiting instruction, "offended" such a principle. The fact that the Magistrate Judge observed that there was no precedential support for a finding that the admission of propensity evidence, or the failure to give

13

a limiting instruction on such evidence, rose to the level of a constitutional violation cannot be equated with a finding that the Magistrate Judge required Petitioner to produce a case with a factually identical fact pattern before he would be entitled to relief. Cases are not resolved in a vacuum, and it is appropriate to consider the factual predicate behind the cases that guide a habeas court's review. *See Williams*, 529 U.S. 362, 407. *See, e.g., Bugh*, 329 F.3d at 512 (relying on the absence of clearly established Supreme Court precedent "which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.") Further, Petitioner "has not presented, nor have we discovered, any Supreme Court precedent indicating that a state court violates a criminal defendant's due process rights when it *properly* admits evidence of the defendant's other bad acts." *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) (emphasis in original).

In an abundance of caution, the Magistrate Judge also recommended finding that, if the evidence was improperly admitted, its admission was harmless. (Report at 15-16.) "For the purposes of habeas review, an error will be harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Earhart v. Konteh*, 589 F.3d 337, 343-44 (6th Cir. 2009) (citing *Fry v. Pliler*, 551 U.S. 112, 116 (2007)). The case against Petitioner was strong. Witnesses saw Petitioner with a weapon, both before and after a gunshot was heard and a flash from the muzzle of a gun was observed. Testimony was also offered that established that Petitioner intended to discharge his weapon for the specific purpose of hindering the police's chase, and that the driver refused to stop because Petitioner had a weapon in the vehicle. In light of this evidence, it cannot be said that the threat testimony could have had a substantial and injurious effect on the jury's verdict. Petitioner's first objection is **OVERRULED**.

14

**B.  Second Objection – Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence for the Magistrate Judge to recommend upholding his convictions for felonious assault and failure to comply with an order or signal of a police officer. In assigning this as error, Petitioner calls into question the character of witnesses who testified against him, people he dismisses as "ne'redowells." (Objections at 14.) Petitioner elaborates by attacking each of the witnesses (except the police officers), as follows: Baker was allegedly drunk the night of the incident, had a pending drug case when she testified against Petitioner, and had motive to deflect blame away from her brother, who may or may not have been in the minivan on the night of the incident; Reed only received probation when Petitioner believes that he should have faced the same prison time as Petitioner for these crimes, and was subsequently convicted of aggravated robbery, felonious assault, drug trafficking, abduction and sexual battery of a 15 year-old girl, in an unrelated criminal action; and Paythruss had a secret deal with the prosecution, as discussed *supra*, to provide testimony in exchange for a relaxed sentence on a pending case against him. (*Id*. at 15-16.)

These obvious attacks upon the credibility of the witnesses who testified at trial make clear that Petitioner is actually claiming that his convictions are against the manifest weight of the evidence, inviting this Habeas Court to re-weigh the evidence offered at trial. He is dissatisfied with the way the jury, and the state appellate court, considered the evidence and would like the federal court to sit as the thirteenth juror. A claim attacking the weight of the evidence is an issue of state law, however, and does not present suitable grounds for federal habeas review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985). *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 838 (E.D. Mich. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

15

Even if the Court views Petitioner's second objection as one based on a sufficiency of the evidence argument, it still falls short. A conviction is based on sufficient evidence if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Phillips v. Bradshaw*, 607 F.3d 199, 220 (6th Cir. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When considering such a claim, a reviewing court does not reweigh the evidence: "[t]he mere existence of sufficient evidence to convict […] defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). "The court must not substitute its own opinion for that of the trier of fact which convicted the petitioner; the court should not weigh the credibility of witnesses." *Hargrove v. Haviland*, No. 1:02-CV-00703, 2005 U.S. Dist. LEXIS 11013, at *8 (S.D. Ohio June 8, 2005) (citing *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983)).

A sufficiency of the evidence claim "'must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law*." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002) (emphasis in original), *cert. denied*, 537 U.S. 980 (2002) (quoting *Jackson*, 443 U.S. 307, 324 n.16). The Court begins with the offense of failure to comply with the orders of a police officer.

The failure to comply statute, Ohio Rev. Code Ann. § 2921.331(B) (2010), states: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Inasmuch as Petitioner was not driving the minivan that was evading the police, the Court looks for evidence that he aided and abetted the driver. Aiding and abetting requires that "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do

16

any of the following: (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense; (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code; (4) Cause an innocent or irresponsible person to commit the offense." Ohio Rev. Code Ann. § 2923.03 (2010). Additionally, the evidence must show that the "defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 246 (2001). In reference to aiding and abetting, the Magistrate Judge found that, based on the evidence, Petitioner "was much more than a passenger. A jury could reasonably have found that Pruitt fired at the police cruiser's windshield hoping to end the pursuit and aid his escape. This alone would be sufficient to find him guilty of aiding the driver in his effort to elude or flee from the police." (Report at 22.)

This Court finds, contrary to Petitioner's belief, that the Magistrate Judge's conclusion that sufficient evidence underlies the convictions for failure to comply finds support in the record. As previously discussed, Paythruss testified that Petitioner told him that he intentionally shot at the patrol car's windshield to cause an accident and have the police end the pursuit. *Pruitt*, 2007 Ohio App. LEXIS 2354, at ¶ 17. In addition, Paythruss testified that Petitioner instructed Reed to slow the vehicle so that the occupants could exit and flee. *Id.* While Petitioner points to other parts of the record as casting doubt on the witnesses' testimony, the fact remains that there was sufficient evidence, if believed, that would support the verdict.

There was also sufficient evidence to support the felonious assault convictions. The Ohio statute regarding felonious assault provides, in pertinent part, "[n]o person shall knowingly […] cause or attempt to cause physical harm to another […] by means of a deadly weapon or dangerous ordnance." Ohio Rev. Code Ann. § 2903.11(A)(2) (2010).

17

At trial, Tasabra Baker, who spent the evening of December 5, 2005 with Petitioner and Reed, testified that Petitioner was in possession of a gun earlier on the same night of the shooting. *Pruitt*, 2007 Ohio App. LEXIS 2354, at ¶ 9. Later in the night, during the police chase, Baker stated that she heard the sound of a gunshot, and then saw Petitioner holding the gun and pulling it in from the window. *Id*. at ¶ 11. Baker later saw Petitioner throw the gun out the window. *Id*. The driver of the minivan, Reed, testified that when the police attempted to pull the vehicle over, Petitioner informed Reed that he possessed a gun and displayed it. *Id*. at ¶ 12. Reed stated that, during the chase and after he saw Petitioner slide the door open, Reed heard the sound of a gunshot being fired from close range. *Id*. at ¶ 13.

The officers who pursued the speeding minivan driven by Reed also confirmed the use of a firearm. Officer Papaleo, the passenger in the following police car, testified that, during the chase, he saw the minivan's passenger door open and saw a muzzle flash from about four or five feet off of the ground. *Id*. at ¶ 5. Additionally, he heard the sound of gunfire. *Id*. Officer Haist, the driver of the police car, as his perspective was different, did not see the muzzle flash but heard a gunshot from the direction of the minivan. *Id*. at ¶ 8. Lastly, Paythruss testified that Petitioner told him that Baker saw him fire the gun and that he was trying to shoot at the windshield of the police cruiser to cause an accident that would end the pursuit. *Id*. at ¶¶ 16-17.

Petitioner takes issue with this evidence, noting that none of the witnesses saw him actually fire the weapon and pointing to what he believes are inconsistencies in the

18

witnesses' stories.[5] The fact remains, however, that the evidence presented at trial, if believed, was sufficient to support the convictions for felonious assault. Petitioner's second objection is **OVERRULED**.

### C. Third Objection – Magistrate Judge did not Reasonably Conclude that the Prosecutor did not Commit Misconduct by Eliciting Testimony from a Police Witness that Stacey Paythruss Offered to take a Lie Detector Test

Petitioner's third objection revolves around his belief that the prosecutor engaged in misconduct when he elicited testimony from a detective regarding Stacey Paythruss's willingness to take a polygraph examination. (Objections at 17.) "Despite 'generally disfavoring admitting the results of polygraph examinations,' [courts] have, nevertheless, 'refused to impose a *per se* prohibition against polygraph evidence, and the mere mention of the words 'polygraph examination' does not entitle a defendant to a new trial.'" *Passino v. Tessmer*, 61 Fed. Appx. 124, 127 (6th Cir. 2003) (quoting *United States v. Thomas*, 167 F.3d 299, 308 (6th Cir. 1999); *United States v. Odom*, 13 F.3d 949, 957 (6th Cir. 1994)).

In evaluating any prosecutorial comment, the court must "determine whether a prosecutor's remarks were improper, and then [] determine whether the impropriety amounts to reversible error." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994); *United States v. Leon*, 534 F.2d 667, 678-83 (6th Cir. 1976). *See also United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004). "In determining whether reversal is necessary, [courts] look to four factors: '(1)

---

[5]Petitioner relies solely upon *Workman v. Tate*, 957 F.2d 1339 (6th Cir. 1992), to show that the minor inconsistencies in the testimony of these witnesses constituted constitutional error. (Objections at 14.) Petitioner's reliance on *Tate* is misplaced inasmuch as *Tate* was not decided on sufficiency grounds. Instead, in *Tate*, the court found that the petitioner had received ineffective assistance from his trial counsel because counsel had failed to call two eye-witnesses who could have contradicted the government's case. The purpose of the Court's discussion of inconsistent statements was to make clear that there was a reasonable probability that the outcome would have been different if these witnesses had been called, showing prejudice based on the *Strickland* standard. *Id*. at 1346. Because these potentially critical witnesses did not get to testify, the jury had no opportunity to resolve the conflicting theories offered by the government and the petitioner. Here, the jury did have the opportunity to resolve any perceived inconsistencies in the witnesses' testimony, and the Court will not substitute its judgment for that of the jury's.

whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.'" *DeJohn*, 368 F.3d at 548 (quoting *Carroll*, 26 F.3d at 1385). "Even if the prosecution's conduct was improper or even universally condemned, [a habeas court] can only reverse if the statements were so flagrant as to render the entire trial fundamentally unfair." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (internal quotation omitted).

This Court finds that the Magistrate Judge properly concluded that there was no prosecutorial misconduct for which relief can be granted. In his Report and Recommendation, the Magistrate Judge set forth both what constitutes prosecutorial misconduct and the tests that should be utilized to determine if the misconduct results in reversible error. (Report at 17.) After reviewing the record before the state appellate court, the Magistrate Judge stated, "Even if the prosecutor's action in eliciting the testimony was improper, it does not warrant habeas relief." (Report at 19.)

Applying the relevant facts, the Court agrees with the Magistrate Judge's conclusion that no reversible error took place. First, it is unlikely that the statement that a witness had been willing to take a polygraph test misled the jury or prejudiced Petitioner. Since the witness did not take a polygraph test, no results could be disclosed at the trial, which would neither increase the belief nor the distrust of that witness from the jury's perspective. Second, mention of the witness's willingness to take a polygraph test occurred only once. Third, while the remark may have been purposefully brought to light through a question to the detective ("Was [Mr. Paythruss] willing to submit to any tests or anything else?" *Id.* citing TR at 560), Petitioner concedes that the prosecutor made no reference to it in summation. (*Id.*) In fact, it was

20

only defense counsel who reminded the jury about the lack of a polygraph test. (Doc. No. 18, Respondent's Response at 9-10 citing TR at 782-783.) Fourth, as previously discussed, the evidence against Petitioner was strong.

Additionally, the present case is easily distinguishable from the cases cited by Petitioner, wherein actual polygraph test results were not admitted. *See United States v. Blakeney*, 942 F.2d 1001, 1014 (6th Cir. 1991); *United States v. Alexander*, 526 F.2d 161, 166 (8th Cir. 1975). Here, there were no results of a polygraph test that could be admitted into evidence, a fact made clear by defense counsel in his closing argument. The mere mention of the witness's offer to take a polygraph cannot have caused the jurors to abdicate their duty to determine credibility. The Court finds that, even if the prosecutor's actions may have been improper, they did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). *See, e.g., Johnson v. Bagley*, 544 F.3d 592, 598 (6th Cir. 2008) (Even though the prosecutor "would have done well to refrain from making certain other statements," these statements did not deny him a fair trial). Petitioner's third objection is **OVERRULED**.

## D. Fourth Objection: The Magistrate Judge's Handling of Petitioner's Ineffective Assistance of Counsel Claim

Petitioner contends that the Magistrate Judge "mishandled" the ineffective assistance of counsel assignment of error. In this fourth and final objection, Petitioner maintains that the Magistrate Judge improperly recommended denying the issuance of a writ of habeas corpus since the state appellate court misapplied the *Strickland* standard and considered the instances of alleged ineffectiveness individually, as opposed to cumulatively. Neither complaint supports a grant of the petition.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court in *Strickland* announced the now familiar two-prong test to determine if there was ineffective assistance of counsel, which would result in reversible error:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance […]." *Id*. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 1. State Court of Appeals' Application of the *Strickland* Standard and Deference by the Magistrate Judge

Petitioner claims that the state appellate court misapplied the *Strickland* standard. Specifically, Petitioner believes that the state court equated the prejudice prong with manifest injustice, and "blurred the distinction between the performance and prejudice prongs of Strickland[.]" (Objections at 20.) With respect to this second alleged error, Petitioner suggests that the state court considered his ineffective claim from the position that "if the prosecution

22

manages to muster legally sufficient evidence against a particular defendant, there is no need for the defendant to receive effective representation from his lawyer." (*Id*. at 21.)

Petitioner's objection appears to be directed toward excerpts he lifted from the state appellate court's decision wherein the court noted that there was "sufficient evidence" to convict Petitioner of felonious assault of a police officer, *see Pruit,* 2007 Ohio App. LEXIS 2354, at ¶ 52, and where the appellate court referenced its prior discussion wherein it concluded that the admission of the threats did not render the trial fundamentally unfair. *Id*. at ¶ 53.

The appellate court did not conclude that "the performance at trial of Pruitt's attorney fell below an objective standard of reasonable representation." *Id*. at ¶ 51. This was proper under *Strickland*, which requires counsel's deficiency to fall "below an objective standard of reasonableness" to satisfy the first prong. *Strickland*, 466 U.S. at 688. With respect to a failure to request for bifurcation, the court also found that the disability evidence "did not taint the entirety of the proceedings to the extent that a reasonable probability exists that the result of the proceedings would have been different." *Id*. at ¶ 51. This inquiry satisfied the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 694. While Petitioner complains that the appellate court referenced the sufficiency of the evidence to support the charges of felonious assault and failure to comply with the order of a police officer, it was clearly offered to support the conclusion that "the failure to bifurcate the disability charge was not prejudicial." *Pruitt,* 2007 Ohio App. LEXIS 2354, at ¶ 52. *See, e.g., Yandell v. Horel*, 2010 U.S. Dist. LEXIS 48163, at *22 (N.D. Cal. Apr. 22, 2010) (even if counsel had effectively impeached a government witness, sufficient evidence of guilt eliminated "a reasonable probability that the outcome of the proceeding would have been different"); *McPherson v. Harrison*, 171 Fed. App'x 177, 178 (9th Cir. 2006) (failure to "walk" the defendant before the jury to undermine an eyewitness

23

identification "fails to establish prejudice because there was sufficient evidence of [the defendant's] guilt beyond this eyewitness testimony"). The Court cannot fault this approach.

Petitioner also complains that the appellate court "collapsed" the deficiency and prejudice prongs of the test when evaluating counsel's failure to keep out the threat evidence. He further argues that the state appellate court used a heightened prejudice standard when it allegedly required Petitioner to prove that his trial was unfair in order to establish that he was prejudiced. The appellate court observed:

> We have previously concluded in the first assigned error that the testimony regarding Pruitt's alleged threat to kill a judge and the children of the arresting officers did not deprive him of a fair trial. Consequently, when viewed in its entirety, Pruitt has failed to show that his attorney's performance fell below an objective standard of reasonable representation.

According to Petitioner, the appellate court employed a heightened prejudice standard it believes was announced in *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993), wherein the Supreme Court held that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[6] As the court in *Strickland* observed: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding

---

[6] The Supreme Court has ruled that *Lockhart* did not, in any way, modify the prejudice standard announced in *Strickland*. *Williams v. Taylor*, 529 U.S. 362, 391 (2000). In *Williams*, the Court found that the state appellate court had misread *Lockhart* "to require a separate inquiry into fundamental fairness even when [the petitioner was] able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding." *Id*. at 393.

whose result is being challenged." *Id*. at 696. *See Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

Indeed, the Sixth Circuit has commented upon the propriety of inquiring into whether counsel's errors and omissions may have rendered the trial unfair as part of the overall inquiry into whether a defendant has suffered prejudice. "[A] reviewing court does not speculate whether a different strategy might have been more successful, [] instead it 'focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (quoting *Lockhart,* 506 U.S. at 372)). Here, the appellate court properly applied the *Strickland* prejudice standard and considered whether counsel's failure to keep out the threat evidence was so prejudicial that it deprived Petitioner of a fair trial. It did not, as Petitioner suggests, require a separate inquiry into fundamental fairness.

Even if the appellate court had employed the wrong standard, the inquiry would not end there. In *West v. Bell*, 550 F.3d 542 (6th Cir. 2008), the Sixth Circuit entertained the argument that the state appellate court had applied the wrong prejudice standard when it failed to cite to the two-prong test of *Strickland* and, instead, relied exclusively on *Lockhart*. The court found that even if the state court had applied the wrong standard, it still arrived at the right result, noting that "[a] careful reading of the record demonstrates that [the petitioner's] counsel was not so ineffective as to constitute a denial of his constitutional rights."[7] *Id*. at 554.

---

[7] Petitioner suggests that the decision in *Goodman v. Bertrand*, 467 F.3d 1002 (7th Cir. 2006), is binding on this Court, and dictates a contrary result. Petitioner is wrong on both counts. Contrary to Petitioner's representation, Goodman is a Seventh, and not Sixth, Circuit decision. Moreover, even if the state appellate court in the case in hand had employed the wrong standard, as discussed below, this Court finds that application of the proper standard would have yielded the same result.

Here, regardless of the propriety of the standard employed, the appellate court reached the correct result. Trial counsel, following a reasonable strategy, elicited the testimony in question in an effort to discredit a government witness by bringing out the possibility that he had an ulterior motive for testifying. Moreover, given the fact that the trial evidence established that Petitioner was in possession of a weapon, and that he fired the weapon in order to hinder the officers' pursuit of the minivan, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Court finds that the state appellate court properly applied the *Strickland* standard to his ineffective assistance of counsel claim, and, even if it did not, the result was proper, the Court **OVERRULES** the first part of his fourth objection.[8]

### Entitlement to Relief on Ineffective Assistance of Counsel Claim

Petitioner also takes issue with the Magistrate Judge's apparent refusal to consider the cumulative effect of trial counsel's alleged errors and omissions. After addressing each asserted instance of ineffectiveness separately, the Magistrate declined Petitioner's invitation to consider any possible cumulative effect, noting that "'the law of this Circuit is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue.'" (Report at 29 (quoting *Cross v. Stovall*, 238 Fed. App'x 32, 41 (6th Cir. 2007))

---

[8] Of course, Petitioner does not object to the Magistrate Judge's conclusion that the appellate court's application of *Strickland,* even if erroneous, did not require reversal because the application was not unreasonable. The Supreme Court and the Sixth Circuit have "stated that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000) (quoting *Williams*, 529 U.S. at 411 (2000)). "[T]his court has applied the test laid out in *Williams*, interpreting it to mean that even if this court 'believes that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one.'" *Id.* (quoting *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000)). The Court adopts the Magistrate Judge's analysis and determination that the state appellate court's application of *Strickland* was not unreasonable.

(internal citation omitted). The Court agrees with Petitioner that the Magistrate Judge confused the consideration of cumulative trial errors with the inquiry into whether the cumulative effect of alleged instances of ineffectiveness resulted in reversible error.

The Magistrate Judge is correct to the extent that a habeas court may not consider the cumulative effect of separate trial errors, which individually do not rise to the level of a constitutional violation. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[P]ost-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Loraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (death-penalty decision stating, "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.") Petitioner is not, however, advocating that his individual assignments of error can be cumulated to support an entitlement to relief. Instead, he argues that the effect of trial counsel's alleged errors and omissions must be considered as a whole. (Objections at 22, "This is not a cumulative error claim as the Magistrate suggests: It is an ineffective assistance of counsel claim, bolstered by numerous examples of incompetence which entitle Mr. Pruitt to relief.")

*Strickland* counsels that an attorney's performance must be considered "in light of all of the circumstances." *Strickland*, 466 U.S. at 690. "Rather than evaluating each error in isolation […], the pattern of counsel's deficiencies must be considered in their totality." *Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006). *See Mackey v. Russell*, 148 Fed. App'x 355, 365 (6th Cir. 2005) ("[T]he *Strickland* test requires that prejudice be evaluated in light of the cumulative effect of all constitutionally infirm actions by counsel.") Thus, the Court rejects the Magistrate Judge's representation that it is inappropriate to consider the cumulative effect of each alleged instance of ineffectiveness.

27

Notwithstanding the Magistrate Judge's aversion to considering the alleged errors and omissions cumulatively, he ultimately did consider what, if any, cumulative impact counsel's conduct may have had on the case. The Magistrate Judge concluded that "even considering the cumulative impact of counsel's conduct, in light of the evidence, there is no reasonable probability that the outcome of the trial would have been different." (Report at 29.) The Court agrees with this conclusion, based upon the strength of the case against Petitioner, which the Court has discussed, *supra*. Moreover, the Court need not even reach the question of cumulative effect, in light of the fact that none of the asserted instances constituted deficient performance. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court […] to address both components of the [effectiveness] inquiry if the defendant makes an insufficient showing on one.") For all of these reasons, Petitioner's fourth objection is **OVERRULED**.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Court **ADOPTS**, in part, the Report and Recommendation of the Magistrate Judge. Petitioner's application for a writ of habeas corpus is **DENIED**.

This Court hereby certifies, pursuant to 28 U.S.C. § 2253(c), that an appeal from the decision would be frivolous and could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: August 18, 2010                    *s/  Sara Lioi*
                                          **HONORABLE SARA LIOI**
                                          **UNITED STATES DISTRICT JUDGE**